ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| MARÍA PAULA SERRANO MANTILLA<br><br>Apelada<br><br>v.<br><br>DIERIC ANDERSON DÍAZ SILVA<br><br>Apelante | TA2025AP00577 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: CA2025RF00454<br><br>Sobre: Divorcio Ruptura Irreparable |
|---|---|---|

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez

Sánchez Báez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 7 de mayo de 2026.

Compareció el Sr. Dieric Anderson Díaz Silva (en adelante, "señor Díaz Silva" o "apelante") mediante el recurso de apelación de epígrafe. Nos solicitó la revisión de la *Sentencia* emitida el 12 de septiembre de 2025 y notificada el 15 de septiembre de 2025 por el Tribunal de Primera Instancia, Sala Superior de Carolina (en adelante, "foro de instancia"). En el aludido dictamen, el foro de instancia concedió la solicitud de divorcio por la causal de ruptura irreparable, quedando disuelto el vínculo matrimonial entre las partes. Además, realizó determinaciones en torno a la patria potestad, custodia de la hija en común, y estableció un plan de relaciones paternofiliales.

Por los fundamentos expuestos a continuación, la *Sentencia* apelada se **modifica** en parte y, en lo demás, se **confirma**.

**-I-**

El 4 de agosto de 2025, la Sra. María Paula Serrano Mantilla (en adelante, "señora Serrano Mantilla" o "apelada") instó Demanda[1]

---

[1] SUMAC-TPI, entrada núm. 1.

sobre divorcio por la causal de ruptura irreparable contra el señor Díaz Silva. Solicitó, además, la custodia monoparental de la hija menor de edad que procrearon durante su matrimonio, ya que contemplaba mudarse a Bogotá, Colombia. Asimismo, solicitó que la patria potestad fuera compartida entre ambos progenitores, no obstante, pidió que se le otorgaran capacidades tutelares para atender los asuntos médicos y académicos de la menor.

El 8 de septiembre de 2025, el señor Díaz Silva presentó su *Contestación a Demanda[2],* en la que aceptó que la patria potestad de la menor sea compartida entre ambos padres y, en cuanto a las capacidades tutelares, expresó que no tenía reparo en que la señora Serrano Mantilla tomara decisiones de emergencia sobre la menor.

En igual fecha, presentó una *Reconvención*[3] mediante la cual alegó que, aunque autorizó a la señora Serrano Mantilla trasladarse a Colombia junto a la menor, no habían establecido un acuerdo sobre las relaciones paternofiliales. Sostuvo que viaja cada dos meses a Colombia por el término de una semana y pernocta en el inmueble que posee en esa jurisdicción. Por lo cual, solicitó al foro de instancia que estableciera un plan de relaciones paternofiliales detallado para relacionarse con la menor el tiempo que se encuentre en Colombia. En particular, solicitó lo siguiente: (1) recoger a la menor los domingos en horas de la mañana y entregarla los viernes en horas de la tarde; (2) recoger a la menor el día de su cumpleaños y el día festivo de navidad, a las 8:00 am y entregarla ese mismo día a la 1:00 pm; y (3) que la menor viaje a Puerto Rico dos veces al año, en periodo de vacaciones escolares durante el mes de enero y julio, por el término de dos semanas.

---

[2] *Id.,* entrada núm. 25.
[3] *Id.*

Así las cosas, el 11 de septiembre de 2025, el foro de instancia celebró el juicio en su fondo, en el que ambas partes declararon en corte abierta.

Tras aquilatar la prueba, el foro de instancia emitió *Sentencia*[4] el 12 de septiembre de 2015, notificada el 15 de septiembre de 2025, mediante la cual concedió la solicitud de divorcio por la causal de ruptura irreparable, quedando disuelto el vínculo matrimonial entre el señor Díaz Silva y la señora Serrano Mantilla. Respecto a la comunidad de bienes, hizo constar que ambas partes declararon durante el juicio que existían bienes adquiridos en el matrimonio sujetos a liquidación. En cuanto a la hija en común, determinó que ambos padres ostentarían su patria potestad, mientras la señora Serrano Mantilla ejercería la custodia monoparental, en razón de su traslado a Bogotá, Colombia. Además, dispuso lo siguiente:

> [...] se otorgan a la madre **facultades tutelares plenas**, a fin de que pueda tomar **todas las decisiones relacionadas con el bienestar de la menor** —incluyendo su educación y salud— sin necesidad de la presencia ni el consentimiento del padre. No obstante, la madre tendrá la obligación de mantener informado oportunamente al padre sobre todos los asuntos relacionados con la menor.[5]

Asimismo, el foro de instancia estableció un plan para las relaciones paternofiliales, las cuales serán abiertas y sujetas a la edad y etapas de desarrollo de la menor. Sobre esto, consignó lo siguiente:

> [...] el padre se relacionará con la menor mediane videollamadas, con la frecuencia que resulte adecuada a la edad de la niña.
> Además, el padre se relacionará presencialmente con la menor durante sus viajes a Bogotá, Colombia. El padre viajará cada dos (2) meses a Bogotá, por un periodo de una (1) semana, para compartir con su hija, conforme a lo que acuerden las partes. Asimismo, coordinarán para que el padre pueda compartir con la menor durante festividades y en la celebración de su cumpleaños.
> De igual forma, las partes realizarán las coordinaciones necesarias para que, ocasionalmente, la menor pueda viajar con el padre a Puerto Rico. El padre será responsable de trasladar a la menor desde y hacia Bogotá, Colombia.[6]

---

[4] *Id.,* entrada núm. 29.
[5] *Id.* (énfasis en el original).
[6] *Id.,* pág. 2.

Por último, estableció una pensión alimentaria en beneficio de la menor y una pensión excónyuge en beneficio de la señora Serrano Mantilla, ambas de manera provisional.

En desacuerdo con lo anterior, el 30 de septiembre de 2025, el señor Díaz Silva instó *Solicitud de enmienda nunc pro tunc o en la alternativa de reconsideración.*[7] Argumentó que, durante el juicio, nunca aceptó la existencia de bienes comunes y, por lo cual, solicitó que se enmendara la Sentencia para señalar que fue la señora Serrano Mantilla quien único testificó sobre ese asunto. En cuanto a la patria potestad de la menor, solicitó que se le reconozcan sus derechos y deberes sobre la toma de decisiones en asuntos de educación, salud y todo aquello que no sea de naturaleza urgente. Esto es, autoriza que la señora Serrano Mantilla únicamente pueda tomar decisiones que requieran acción inmediata por tratarse de asuntos de emergencia. Por último, solicitó que el plan de relaciones paternofiliales fuera acogido de forma provisional.

El 10 de octubre de 2025, la señora Serrano Mantilla presentó su *Oposición reconsideración*[8] mediante la cual señaló que no tiene reparo en que se consigne en la sentencia que el señor Díaz Silva niega la existencia de bienes durante la vigencia del matrimonio, mientras que ella sostiene que sí existen. En cuanto a las facultades tutelares que le fueron concedidas, sostuvo que no le restan derechos al señor Díaz Silva, sino que asegura las necesitades y bienestar óptimo de la menor, por estar en un país lejano a Puerto Rico. Respecto a las relaciones paternofiliales, argumentó que la menor aún es muy pequeña para que pernocte con el señor Díaz Silva. No obstante, aclaró que, en el futuro, a la luz de la edad de la

---

[7] *Id.*, entrada núm. 33.
[8] *Id.,* entrada núm. 38.

menor y de las circunstancias particulares del caso, las relaciones paternofiliales podrían ser objeto de modificación.

Ante esto, el 21 de octubre de 2025, el foro de instancia emitió una *Orden*, notificada al día siguiente, en la cual denegó la solicitud de reconsideración y sostuvo lo siguiente: "SE APERCIBE QUE LA SENTENCIA EMITIDA SE EMITIÓ EN VIRTUD DE LA PRUEBA DESFILADA, LUEGO DE DIRIMIDA CREDIBILIDAD Y CON LA ANUENCIA DE LAS PARTES."[9]

Inconforme, el 21 de noviembre de 2025, el señor Díaz Silva presentó el recurso de apelación de epígrafe, en el que esbozó los señalamientos de error siguientes:

PRIMER ERROR
EL TPI ABUSÓ DE SU DISCRECIÓN E INCURRIÓ EN UN ERROR MANIFIESTO AL REALIZAR DETERMINACIONES EN LA SENTENCIA QUE SON CONTRARIAS A LA PRUEBA PRESENTADA EN EL JUICIO EN SU FONDO.

SEGUNDO ERROR
ERRÓ EL TPI AL CONCEDER A LA APELADA FACULTADES TUTELARES PLENAS A FIN DE QUE PUEDA TOMAR TODAS LAS DECISIONES RELACIONADAS CON EL BIENESTAR DE LA MENOR, PRIVANDO AL APELANTE DE LOS DERECHOS QUE LE ASISTEN Y ANULANDO SUS DEBERES EN VIRTUD A LA PATRIA POTESTAD DE LA MENOR, LO CUAL CONSTITUYE UN ERROR CRASO DE DERECHO.

TERCER ERROR
ERRÓ EL TPI AL ESTABLECER COMO FINAL UN PLAN DE RELACIONES PATERNOFILIALES ABIERTO, CUANDO DE LOS AUTOS SURGE QUE DURANTE EL JUICIO EN SU FONDO EL TPI DISPUSO QUE SERÍA CONFORME A LA SOLICITUD DEL APELANTE Y DE FORMA PROVISIONAL POR QUEDAR DETALLES DEL PLAN POR ACORDAR.

CUARTO ERROR
EL TPI ABUSÓ DE SU DISCRECIÓN E INCURRIÓ EN UN ERROR MANIFIESTO AL INCLUIR COMO DETERMINACIÓN QUE AMBAS PARTES DECLARARON EN EL JUICIO EN SU FONDO SOBRE LA EXISTENCIA DE BIENES COMUNES, CUANDO LA APELADA FUE QUIEN ÚNICO TESTIFICÓ SOBRE ELLO, INCURRIENDO EN UN ERROR EN LA APRECIACIÓN DE LA PRUEBA.[10]

---

[9] *Id.,* entrada núm. 43.
[10] SUMAC-TA, entrada núm. 1.

En igual fecha, el apelante presentó la Transcripción de Prueba Oral (en adelante, "TPO")[11], la cual fue acogida como transcripción estipulada el 17 de febrero de 2026.[12]

Transcurrido el término dispuesto en la Regla 22 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, págs. 38-39, 216 DPR __ (2025), para que la señora Serrano Mantilla presentara su alegato en oposición al recurso de epígrafe, no compareció, por lo que damos por perfeccionado el recurso. Así pues, procedemos a exponer la normativa jurídica aplicable a las controversias ante nuestra consideración.

**-II-**

**A. Tutela**

En Puerto Rico, la figura jurídica de la tutela "confiere a una persona natural o jurídica la autoridad para representar y asistir a otra que, sin estar sujeta a la patria potestad, tiene restringida la capacidad de obrar por razón de su minoridad o por las causas que declara la ley". Artículo 122 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5661. Esto es, nuestro ordenamiento reconoce las a personas que pueden estar sometidas a tutela, a saber: (1) el menor de edad no emancipado que no se encuentra bajo la patria potestad de sus progenitores; y (2) el mayor de edad cuya capacidad de obrar está restringida por sentencia de incapacitación. Artículo 123 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5662. En ese sentido, la legislación vigente faculta a los progenitores que ejercen la patria potestad a deferir la tutela de su hijo menor de edad en caso de que ambos fallezcan o se encuentren inhabilitados para atenderlo. Artículo 126 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5671. Es importante conocer que para que proceda el

---

[11] *Id.,* entrada núm. 2.
[12] *Id.,* entrada núm. 7.

nombramiento de un tutor, el menor no puede estar sujeto a la patria potestad de otro progenitor.

En esencia, esta figura tiene como finalidad la guarda y representación de una persona incapaz —por razón de minoridad o incapacitación judicial— así como la administración de sus bienes, conforme a las limitaciones que establezca la sentencia y las exigencias del régimen tutelar aplicable. Artículo 122 del Código Civil de Puerto Rico de 2020, *supra.* Asimismo, tales funciones constituyen un deber que se ejerce en beneficio del tutelado y bajo la supervisión de la autoridad judicial. *Id.*

## B. Patria Potestad

En nuestro ordenamiento jurídico, la patria potestad es aquel "conjunto de deberes y derechos que corresponden a los progenitores sobre la persona y los bienes de los hijos, desde que estos nacen hasta que alcanzan la mayaría de edad y obtienen su emancipación". Artículo 589 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7241.  La patria potestad otorga a los progenitores los deberes y facultades siguientes:

> (a) velar por él y tenerlo en su compañía;
> (b) alimentarlo y proveerle lo necesario para su desarrollo y formación integral;
> (c) inculcarle valores y buenos hábitos de convivencia y el respeto a sí mismo y hacia los demás;
> (d) corregirlo y disciplinarlo según su edad y madurez intelectual y emocional y castigarlo moderadamente o de una manera razonable; y
> (e) representarlo en el ejercicio de las acciones que puedan redundar en su provecho y en aquellas en las que comparece como demandado.

Artículo 590 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7242.

En Puerto Rico, como regla general, ambos progenitores ejercen en forma conjunta la patria potestad con paridad de derechos y responsabilidades. Artículo 593 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7252. A modo de excepción, "puede ejercerla uno de ellos, si media el consentimiento expreso o tácito del otro o un decreto judicial". *Id.* Sin embargo, nuestro estado

derecho vigente requiere que ambos progenitores presten consentimiento expreso sobre ciertos asuntos relacionados a sus hijos, a saber:

> (a) autorizar intervención quirúrgica en circunstancias que no estén contempladas en los artículos siguientes;
> (b) darlo en adopción;
> (c) emanciparlo;
> (d) autorizarlo a contraer matrimonio;
> (e) autorizarlo a salir temporal o permanentemente de Puerto Rico; o
> (f) realizar cambios extraordinarios en la manera de administrar sus bienes.

Artículo 594 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7253.

Ahora bien, en caso de que el hijo requiera algún tratamiento médico o intervención quirúrgica de carácter urgente o de emergencia —conforme al juicio informado del médico o del personal cualificado—, bastará el consentimiento de un solo progenitor. Artículo 595 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7254. En tales circunstancias, se entenderá que el tratamiento es de emergencia o urgencia "si la vida o las funciones cognitivas, mentales o físicas del hijo están comprometidas o amenazadas". *Id.*

Cabe señalar que, la ley reconoce expresamente que la titularidad y el ejercicio de la patria potestad corresponde a un solo progenitor en las situaciones siguientes:

> (a) únicamente ese progenitor lo ha reconocido o adoptado;
> (b) el otro progenitor ha muerto o se presume su muerte, se encuentra ausente o ha sido incapacitado judicialmente; o
> (c) el otro progenitor ha sido privado de ella por las causas que autoriza este Código.

Artículo 597 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7256.

## C. Abuso de discreción

Las decisiones del Tribunal de Primera Instancia merecen gran deferencia, toda vez que conoce mejor las particularidades del caso y está en mejor posición para tomar las medidas necesarias para cimentar el curso de acción hasta obtener una disposición final. *Citibank et al v. ACBI et al.,* 200 DPR 724, 735-736 (2018); *Mejías et al. v. Carrasquillo et al.,* 185 DPR 288, 306-307 (2012). Por

ello, los foros primarios "cuentan con una discreción que es inherente a su función de resolver los casos y controversias que llegan ante su consideración". *Pueblo v. Custodio Colón*, 192 DPR 567, 588 (2015).

Siendo así, la regla general es que los tribunales apelativos no deben intervenir con las determinaciones del foro primario ni sustituir su criterio, salvo que las decisiones emitidas sean arbitrarias o constituyan un abuso de discreción judicial. *Citibank et al. v. ACBI et al.*, supra, pág. 736; *Pueblo v. Custodio Colón*, supra, pág. 589.

En nuestro ordenamiento, la "discreción judicial" se refiere a la facultad de un tribunal de justicia para resolver de una forma u otra, o de escoger entre varios cursos de acción. *Citibank et al. v. ACBI et al.*, supra, pág. 735; *García v. Asociación*, 165 DPR 311, 321 (2005). Además, se ha interpretado que la discreción está atada al concepto de razonabilidad y, a la vez, se fundamenta en un sentido llano de justicia. *Id.* Esto es, la "discreción es una forma de razonabilidad que aplica al discernimiento judicial para llegar a una conclusión justiciera". *Id.*

A esos efectos, un tribunal incurre en abuso de discreción cuando: "(1) el juez no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (2) el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en él, o (3) a pesar de tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez sopesa y los calibra livianamente". *Pueblo v. Custodio Colón*, supra, pág. 589; véase, además, *Citibank et al. v. ACBI et al.*, supra, pág. 736.

**C. Apreciación de la Prueba**

Nuestro Tribunal Supremo ha sido enfático en que los tribunales apelativos —como regla general— debemos evitar intervenir con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realiza el foro primario, salvo que se demuestre que este incurrió en error manifiesto, pasión, prejuicio o parcialidad. *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884, 917 (2016); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013); *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 811 (2009); *Argüello v. Argüello*, 155 DPR 62, 78-79 (2001). Por consiguiente, nuestra facultad de sustituir las determinaciones hechas por el Tribunal de Primera Instancia se limita a aquellas circunstancias en las que no exista base suficiente para apoyar las mismas a la luz de la prueba admitida. *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 779 (2022); *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 794 (2020).

De este modo, una parte que impugne las determinaciones de hechos emitidas por el foro primario debe identificar el error manifiesto o fundamentar la existencia de pasión, prejuicio o parcialidad. *SLG Rivera Carrasquillo v. AAA*, 177 DPR 345, 356 (2009). Dicha parte deberá "sustentar sus alegaciones con evidencia suficiente, pues estas no deben convertirse en un instrumento para ejercer presión contra el Tribunal de Primera Instancia". *Dávila Nieves v. Meléndez Marín,* supra, pág. 775. De esta forma, el foro apelativo podrá evaluar si el juzgador de los hechos cumplió con su rol de adjudicar la controversia conforme a derecho y de manera imparcial. *Id.*, pág. 777.

Discutido el derecho aplicable, este Tribunal se encuentra en posición para resolver las controversias señaladas en el recurso de epígrafe.

**-III-**

El apelante esbozó cuatro (4) señalamientos de error, los cuales se discutirán en conjunto por estar relacionados. En esencia, alegó que el foro de instancia erró y abusó de su discreción al determinar en la *Sentencia* apelada lo siguiente: (1) conceder a la señora Serrano Mantilla facultades tutelares plenas sobre la menor, incluyendo asuntos de salud y educación; (2) establecer un plan para las relaciones paternofiliales sin precisar su carácter provisional; y (3) sostener que el señor Díaz Silva y la señora Serrano Mantilla declararon durante el juicio que existían bienes comunes sujetos a liquidación. Tiene razón.

En cuanto a la determinación sobre las facultades tutelares, observamos que el foro de instancia concedió facultades tutelares plenas incluyendo asuntos de salud y educación a favor de uno de los progenitores de la menor en contravención con el derecho vigente. En el acápite II de esta *Sentencia*, distinguimos entre la figura de la tutela y la de la patria potestad. En cuanto a la tutela, expusimos que es ejercida por una sola persona natural o jurídica con la finalidad de guardar y representar a una persona incapaz, ya sea por razón de minoridad o por decreto judicial. Artículo 122 del Código Civil de Puerto Rico de 2020, *supra.* En lo referente a la tutela del menor de edad, nuestra legislación requiere que este sea: (1) menor de edad no emancipado y (2) no se encuentre bajo la patria potestad de ninguno de sus progenitores. Artículo 123 del Código Civil de Puerto Rico de 2020, *supra.* Sin embargo, el nombramiento de un tutor —denominado como tal o bajo cualquier otra designación que implique la delegación de funciones, deberes y derechos inherentes a la tutela— resulta improcedente cuando existe un progenitor con patria potestad. Artículo 126 del Código Civil de Puerto Rico de 2020, *supra.*

En cambio, explicamos que la patria potestad es ejercida por ambos progenitores en forma conjunta, con paridad de derechos y responsabilidades. Artículo 593 del Código Civil de Puerto Rico de 2020, *supra.* A modo excepcional, un solo progenitor puede ejercer la patria potestad por las causas que reconoce la ley. *Id.* Inclusive, únicamente en una situación de emergencia o urgencia en la que se atente contra la vida, funciones cognitivas, mentales o física del hijo en común, es cuando la ley permite el consentimiento de un solo progenitor. Artículo 595 del Código Civil de Puerto Rico de 2020, *supra.* Por tanto, las decisiones sobre cualquier otro asunto relacionado a la menor, como su educación y salud, requieren el consentimiento de ambos progenitores. Artículos 590 y 594 del Código Civil de Puerto Rico de 2020, *supra.* Ello se debe a que ambos progenitores tienen el derecho y el deber de velar por sus hijos hasta que alcanzan la mayoría de edad. Artículo 589 del Código Civil de Puerto Rico de 2020, *supra.*

En el presente caso, la señora Serrano Mantilla y el señor Díaz Silva ostentan la patria potestad compartida de la menor. Por consiguiente, conforme a lo antes expuesto, dicha circunstancia resulta incompatible con el nombramiento de un tutor o de cualquier persona a quien, bajo cualquier título, se le confieran facultades propias de la figura de la tutela. Vale señalar que, tras revisar el expediente de autos, no hemos hallado consentimiento alguno por parte del señor Díaz Silva para que la apelada ejerza las llamadas "facultades tutelares plenas" sobre la menor. Tampoco surge de la TPO que las partes hayan acordado, durante el juicio, asunto alguno relacionado con las facultades tutelares plenas solicitadas por la apelada. Además, del expediente y de la TPO no surge elemento alguno que —más allá de que la señora Serrano Mantilla reside en Colombia— justifique menoscabar los derechos y deberes inherentes a la patria potestad del señor Díaz Silva

mediante la concesión de facultades tutelares a la apelada. Así pues, el foro de instancia, al conceder las facultades tutelares plenas, se extralimitó e ignoró el derecho vigente sin justificación o fundamento válido. Por lo cual, se modifica la *Sentencia* apelada para dejar sin efecto las facultades tutelares plenas concedidas a la señora Serrano Mantilla. Aclaramos que esta determinación no afecta el derecho de cualquiera de los progenitores de tomar decisiones médicas de carácter urgente o de emergencia relacionadas con la menor, sin necesidad del consentimiento del otro.

Respecto al señalamiento del plan de relaciones paternofiliales, consta en el expediente que el apelante solicitó en su *Reconvención* un plan detallado para relacionarse con la menor durante el tiempo que se encuentre en Colombia. Sin embargo, obra en la TPO que la señora Serrano Mantilla no tuvo oportunidad de dialogar con su representación legal sobre la solicitud del apelante ni de dialogar un acuerdo con este último. Véase, TPO, págs. 36 y 37, líneas 13-25 y 1-25. A pesar de ello, surge de la TPO que estuvo de acuerdo en que el plan de relaciones paternofiliales fuese abierto y provisional. Véase, TPO, pág. 38, líneas 4-22. Más importante aún, consta en la TPO que el foro de instancia expresó, en corte abierta, que acogería provisionalmente en la *Sentencia* el plan de relaciones paternofiliales sugerido por el apelante. Véase, TPO, pág. 40, líneas 10-20. No obstante, al revisar la *Sentencia* apelada, advertimos que el foro de instancia no estableció el carácter provisional de dicho plan. A esos efectos, se modifica la *Sentencia* apelada para hacer constar que el plan de relaciones paternofiliales es provisional, en consideración la edad y las etapas de desarrollo de la menor. Aclaramos, sin embargo, que el plan allí despuesto continua en pleno vigor.

En cuanto al señalamiento de los bienes comunes, nos percatamos que —durante el juicio— solo la señora Serrano Mantilla

declaró sobre la existencia de bienes comunes. Véase, TPO, pág. 24, líneas 17-20. Incluso, el apelante, a través de su representante legal, aclaró que no estaba aceptando esa alegación, sino que era la alegación de la señora Serrano Mantilla. Véase, TPO, pág. 25, líneas 11-15. De hecho, se desprende de la TPO que la apelada manifestó su conformidad con la aclaración del apelante. Véase, TPO, pág. 25, líneas 16-18. Esto es, no consta en el récord que, el apelante haya declarado en el juicio que existían bienes adquiridos durante el matrimonio sujetos a liquidación. Así pues, el foro de instancia cometió un error manifiesto al adoptar esa determinación de hecho. En consecuencia, se modifica la *Sentencia* apelada a los fines de hacer constar que solo la señora Serrano Mantilla declaró que existían bienes comunes sujetos a liquidación. Con ello, no sustituimos el criterio o la credibilidad que pudo a ver otorgado el foro de instancia, sino que corregimos una determinación que simplemente no se sostiene en la prueba.

### -IV-

Por los fundamentos expuestos previamente, se **modifica** la *Sentencia* apelada de la manera siguiente: (1) se dejan sin efecto las facultades tutelares plenas concedidas a la parte apelada; (2) se dispone que el plan de relaciones paternofiliales impuesto en el presente caso es de carácter provisional; y (3) se establece que únicamente la parte apelada declaró que existían bienes comunes sujetos a liquidación. En cuanto al resto de la *Sentencia* apelada, se **confirma.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones